UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **WAG ACQUISITION, L.L.C.,** | § § § § § | |
| Plaintiff, | § | Case No. 6:21-cv-1083 |
| - against - | § § | Patent Case<br>Jury Trial Demanded |
| **NETFLIX, INC.,** | § § | |
| Defendant. | § § § § | |

**NETFLIX, INC.'S MOTION TO STAY PENDING
*EX PARTE* REEXAMINATIONS OF RELATED PATENTS**

# **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................................. 2

III.  LEGAL STANDARD ......................................................................................................... 4

IV.  ALL THREE FACTORS FAVOR A STAY ..................................................................... 5
    The First Factor Favors A Stay: WAG Is Not Unduly Prejudiced, The Asserted Patents Expired And The Parties Are Not Competitors ...................................... 5
    B.  The Second Factor Favors A Stay: The Case Is In Its Early Stages ....................... 6
    C.  The Third Factor Favors A Stay: Resolution Of The EPRs Will Simplify The Case ................................................................................................... 7

V.  CONCLUSION ................................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Black Hills Media, LLC v. Samsung Elecs. Co.*,
    Case No. 2:13-cv-379-JRG-RSP, 2014 U.S. Dist. LEXIS 201106 (E.D. Tex.
    Mar. 17, 2014) ...................................................................................................................6

*Clinton v. Jones*,
    520 U.S. 681 (1997) ...........................................................................................................4

*Convergence Techs. (USA), LLC v. Microloops Corp.*,
    Case No. 5:10-cv-02051 EJD, 2012 U.S. Dist. LEXIS 51794 (N.D. Cal. Apr.
    12, 2012) ...........................................................................................................................6

*Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*,
    No. 6:18-cv-30, 2019 U.S. Dist. LEXIS 229613, at *7 (E.D. Tex. Aug. 28,
    2019) .................................................................................................................................6

*e-Watch, Inc. v. ACTi Corp., Inc.*,
    Case No. SA-12-CA-695-FB, 2013 U.S. Dist. LEXIS 172928 (W.D. Tex.
    Aug. 9, 2013) ....................................................................................................................5

*E-Watch, Inc. v. Lorex Can., Inc.*,
    Case No. 4:12-cv-03314, 2013 U.S. Dist. LEXIS 138198 (S.D. Tex. Sep. 26,
    2013) ...............................................................................................................................13

*Ethicon, Inc. v. Quigg*,
    849 F.2d 1422 (Fed. Cir. 1988) .........................................................................................4

*Evolutionary Intelligence, LLC v. Millenial Media, Inc.*,
    Case No. 5:13-CV-04206-EJD, 2014 U.S. Dist. LEXIS 81090 (N.D. Cal. Jun.
    11, 2014) .........................................................................................................................13

*Microsoft Corp. v. Multi-Tech Sys.*,
    357 F.3d 1340 (Fed. Cir. 2004) ..................................................................................7, 11

*Multimedia Content Mgmt. LLC v. Dish Network*,
    Case No. 6:18-cv-00207-ADA, 2019 U.S. Dist. LEXIS 236670 (W.D. Tex.
    May 30, 2019) ..................................................................................................................4

*Nestle USA, Inc. v. Steuben Foods, Inc.*,
    884 F.3d 1350 (Fed. Cir. 2018) .......................................................................................11

*NFC Tech. LLC v. HTC Am., Inc.*,
   Case No. 2:13-cv-1058, 2015 U.S. Dist. LEXIS 29573 (E.D. Tex. Mar. 11,
   2015) ................................................................................................................................4

*Ohio Willow Wood Co. v. Alps South, LLC*,
   735 F.3d 1333 (Fed. Cir. 2013) ......................................................................................12

*Omega Eng'g, Inc. v. Raytek Corp.*,
   334 F.3d 1314 (Fed. Cir. 2003) ........................................................................................7

*Princeton Digital Image Corp. v. Konami Digital Entm't, Inc.*,
   Case No. 1:12-cv-01461-LPS-CJB, 2014 U.S. Dist. LEXIS 61555 (D. Del.
   Jan. 15, 2014) ...................................................................................................................7

*Regents of the Univ. of Minn. v. LSI Corp.*,
   Case No. 5:18-cv-00821, 2018 U.S. Dist. Lexis 80252 (N.D. Cal. May 11,
   2018) ................................................................................................................................5

*Software Rights Archive, LLC v. Facebook, Inc.*,
   Case No. 12-cv-03970 (RMW), 2013 U.S. Dist. LEXIS 133707 (N.D. Cal.
   Sept. 17, 2013) .................................................................................................................6

*TC Tech. LLC v. T-Mobile USA, Inc.*,
   Case No. 6:20-cv-00899-ADA (Dkt. 44, at 4) (W.D. Tex. Dec. 7, 2021) ..................6, 7, 12, 13

*Tinnus Enters., LLC v. Telebrands Corp.*,
   Case No. 6:15-cv-00551-RWS, 2019 U.S. Dist. LEXIS 114601 ...........................................12

*Veraseal LLC v. Costco Wholesale Corp.*,
   Case No. 2:17-cv-00713-JRG-RSP, 2018 U.S. Dist. LEXIS 230923 (E.D.
   Tex. May 18, 2018) ......................................................................................................4, 7

*Viavi Sols. Inc. v. Platinum Optics Tech. Inc.*,
   No. 5:20-cv-05501-EJD, 2021 U.S. Dist. LEXIS 202390, (N.D. Cal. Oct. 20,
   2021) ..............................................................................................................................12

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
   759 F.3d 1307 (Fed. Cir. 2014) ........................................................................................6

*WAG Acquisition L.L.C. v. Flying Crocodile, Inc. et al.*,
   Case No. 2:19-cv-01278-BJR .........................................................................................2

*WAG Acquisition L.L.C. v. FriendFinder Networks Inc. et al.*,
   Case No. 3:19-cv-05036-JD ...........................................................................................2

**I.        INTRODUCTION**

Defendant Netflix, Inc. ("Netflix") moves to stay this case pending resolution of *ex parte* reexaminations ("EPRs") that the United States Patent and Trademark Office ("PTO") ordered on Plaintiff WAG Acquisition, L.L.C.'s ("WAG") patents related to the patents-in-suit.  A stay will save the Court and parties valuable resources because these Related Patents overlap substantially with the Asserted Patents, and the EPRs may simplify claim construction, non-infringement and invalidity.

The three factors in considering whether to stay the case all favor granting this motion.

First, a stay will not unduly prejudice WAG because Netflix and WAG are not competitors and the Asserted Patents expired in March 2021.  WAG cannot seek a preliminary or permanent injunction and is compensable in monetary damages.

Next, this case is in its early stages.  In lieu of an answer, the present motion is being filed along with Netflix's Motion to Dismiss for Improper Venue.  The parties have not filed a Case Readiness Status Report ("CRSR") and no Scheduling Order has been entered.  Staying the case at this nascent juncture will advance judicial efficiency.

Most importantly, granting a stay pending resolution of the EPRs may simplify or clarify various issues for the Court.  Because of the substantial overlap among claims from the Asserted Patents and those already under *ex parte* reexamination, the Court will be informed on claim construction and non-infringement, because WAG likely will make statements on these claim terms, including potentially disclaiming claim scope.  The PTO's expertise will also simplify the case because an invalidity determination on the Related Patents could call into question the validity of similar Asserted Patents.

Accordingly, Netflix respectfully requests that the Court grant its motion to stay.

II.     **FACTUAL BACKGROUND**

On October 18, 2021, WAG filed its First Amended Complaint ("FAC")[1] alleging Netflix infringes U.S. Patent Nos. 9,729,594 ("the '594 Patent") and 9,742,824 ("the '824 Patent") (the "Asserted Patents").  Dkt. No. 8.  These patents were filed on October 3, 2016; issued on August 8 and 22, 2017, respectively; and claim priority via other issued patents to provisional application No. 60/231,997 ("the '997 Provisional Application") filed on September 12, 2000.  Dkt. No. 8, Exs. A and B.

The FAC alleges that WAG's predecessor, known as SurferNETWORK, developed technology to improve the process of delivering streaming media over the Internet.  Dkt. No. 8, at 1.  However, WAG is primarily in the business of asserting and licensing its patents.  Since 2008, WAG has filed more than twenty patent infringement suits.  *See* Ex. 1.[2]  Netflix provides streaming videos to its customers.  Netflix and WAG are not competitors.

Separately, in *WAG Acquisition L.L.C. v. FriendFinder Networks Inc. et al.*, Case No. 3:19-cv-05036-JD (N.D. Cal.) and in *WAG Acquisition L.L.C. v. Flying Crocodile, Inc. et al.*, Case No. 2:19-cv-01278-BJR (W.D. Wash.), WAG is asserting U.S. Patent Nos. 8,327,011 ("the '011 Patent") and 8,122,141 ("the '141 Patent") (collectively, the "Related Patents") and U.S. Patent Nos. 8,364,839 ("the '839 Patent") and 8,185,611 ("the '611 Patent").  The Related Patents, '839 and '611 Patents also claim priority to the '997 Provisional Application as do the Asserted Patents.  Exs. 2, 3, 4 and 5.  All of these Patents expired on March 28, 2021.

On August 25, 2021, FriendFinder Networks Inc. ("FriendFinder")[3] filed requests for *ex parte* reexaminations on the Related Patents as well as on the '839 and '611 Patents.  On September

---

[1] The Original Complaint and FAC were both filed on the same day. (Dkt. Nos. 1 and 8).
[2] "Ex. __" refers to the accompanying Declaration of Sarah S. Brooks and exhibits thereto.
[3] Counsel for Netflix also represents FriendFinder.

21, 2021, the PTO ordered reexamination of the '141 Patent finding that the reexam request raised **four** substantial new questions of patentability ("SNQPs") for claims 1, 5, 8, 24 and 28, including based on U.S. Patent No. 6,389,473 to Carmel et al.  Ex. 6.  Previously, the Patent Trial and Appeal Board ("PTAB") found on July 16, 2020 in *inter partes* review ("IPR") claims 10, 11 and 13-18 of the '141 Patent anticipated over Carmel and claim 12 obvious over Carmel and ISO-11172 (Ex. 7).  WAG did not appeal.

On September 30, 2021, the PTO ordered reexamination of the '839 Patent finding that the request raised **seven** SNQPs for claim 2.  Ex. 8.  On November 11, 2021, the PTO ordered reexamination of the '011 Patent finding that the request raised **nine** SNQPs for claims 1 and 4. Ex. 9.  On November 12, 2021, the PTO denied FriendFinder's request for *ex parte* reexamination of the '611 Patent.  FriendFinder filed a petition to review this denial on December 12, 2021, which is still pending.[4]  Ex. 10.

According to current statistics, the PTO confirms all claims in 20.9% of reexaminations, but cancels all claims in 13.1% and changes claims in 66.6% of reexaminations.  Ex. 11, at 2 ¶ 8.

Here, the Asserted and Related Patents overlap substantially: they share (1) the same patent family; (2) the same alleged sole inventor, Harold Price; (3) similar specifications, including nearly identical figures; (4) the same expiration date of March 28, 2021; and (5) several claim terms such as "media data element," "data rate more rapid," "playback rate," "predetermined number of media data elements" ('594 Patent only), and "identifiers."  (*Compare* Dkt. No. 8, Exs. A and B with Exs. 2, 3, 4 and 5.  Likewise, claim 2 of the '839 Patent (for which the PTO ordered reexamination) also contains claim terms in common with the Asserted Patents,[5] such as "media data elements,"

---

[4] The PTO has not yet issued a first office action rejection in the ordered reexaminations.
[5] Importantly, the Asserted Patents are a continuation of the '839 Patent.

3

"rate more rapid," and "playback rate." Indeed, the Asserted Patents and the Related Patents are both directed to the same alleged technology or client-pull systems, where "the flow is [allegedly] regulated by the pace of client requests, rather than trying to have the server pace its own delivery" in which the server responds to requests for data by identifier and sends such data faster than the playback rate. FAC, ¶ 17; *see also* Tables 1 and 2 below at 8-11.

### III.   LEGAL STANDARD

A district court has the inherent power to control its own docket, including the power to stay proceedings before it. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *see also*, *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). A stay is particularly justified when "the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues." *NFC Tech. LLC v. HTC Am., Inc.*, Case No. 2:13-cv-1058, 2015 U.S. Dist. LEXIS 29573, at *4 (E.D. Tex. Mar. 11, 2015). "Essentially, courts determine whether the benefits of a stay outweigh the inherent costs based on these factors." *Multimedia Content Mgmt. LLC v. Dish Network*, Case No. 6:18-cv-00207-ADA, 2019 U.S. Dist. LEXIS 236670, at *4 (W.D. Tex. May 30, 2019) (quoting *EchoStar Techs. Corp. v. TiVo, Inc.*, Case No. 5:05-CV-81 (DF), 2006 U.S. Dist. LEXIS 48431, at *4 (E.D. Tex. July 14, 2006)).

"In deciding whether to stay litigation pending reexamination, courts typically consider: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues, and (3) whether discovery is complete and whether a trial date has been set." *Veraseal LLC v. Costco Wholesale Corp.*, Case No. 2:17-cv-00713-JRG-RSP, 2018 U.S. Dist. LEXIS 230923, at *2-3 (E.D. Tex. May 18, 2018).

IV.  **ALL THREE FACTORS FAVOR A STAY**

    A.  **The First Factor Favors A Stay: WAG Is Not Unduly Prejudiced, The Asserted Patents Expired And The Parties Are Not Competitors**.

The first factor weighs in favor of a stay because there is no risk of undue prejudice or tactical disadvantage to WAG resulting from a stay. The Asserted Patents expired on March 28, 2021. Thus, there is no ongoing infringement and no injunctive relief at issue. This case is about past damages only, and granting a stay will not affect the amount of damages WAG will seek. Precedent is clear that when patents have expired and monetary damages are available, a stay is appropriate. *See e.g.*, *Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*, Case No. 6:18-cv-30, 2019 U.S. Dist. LEXIS 229613, at *7 (E.D. Tex. Aug. 28, 2019) (granting stay and finding "when a patentee seeks exclusively monetary damages, rather than a preliminary injunction or other relief, mere delay in collecting those damages does not constitute undue prejudice.") (citations and quotation marks omitted); *Regents of the Univ. of Minn. v. LSI Corp.*, Case No. 5:18-cv-00821, 2018 U.S. Dist. LEXIS 80252, at *9 (N.D. Cal. May 11, 2018) (granting stay and finding that patent holder asserting an expired patent will not be prejudiced because monetary recovery available after stay).

WAG and Netflix also are not competitors. WAG does not provide streaming videos to customers; it is in the business of asserting and licensing patents. Ex. 1. WAG states in the FAC that its **predecessor** "developed technology to improve the process of delivering streaming media over the Internet," but does not aver that SurferNETWORK is a competitor (much less a direct competitor) of Netflix. Dkt. 8, at 1. At most, SurferNETWORK is a modestly-active streaming radio company. Ex. 12 (screenshot of SurferNETWORK's website). Thus, a stay will not prejudice or disadvantage non-competitor WAG. *See e-Watch, Inc. v. ACTi Corp., Inc.*, Case No. SA-12-CA-695-FB, 2013 U.S. Dist. LEXIS 172928, at *29 (W.D. Tex. Aug. 9, 2013) (finding this

factor favors a stay in part because plaintiff provided no evidence that the parties ever competed or are direct competitors); *Black Hills Media, LLC v. Samsung Elecs. Co.*, Case No. 2:13-cv-379-JRG-RSP, 2014 U.S. Dist. LEXIS 201106, at *4 (E.D. Tex. Mar. 17, 2014) (granting stay and finding no prejudice to plaintiff because it did not compete with defendants.); *Convergence Techs. (USA), LLC v. Microloops Corp.*, Case No. 5:10-cv-02051 EJD, 2012 U.S. Dist. LEXIS 51794, at *8-9 (N.D. Cal. Apr. 12, 2012) (granting stay and finding no undue prejudice or tactical disadvantage when plaintiff did not practice the asserted patent and was not in direct competition with defendant).

Finally, WAG may argue that any delay prejudices its right to enforce its expired patents. But this court has recognized "that interest is present in every case where a patent owner resists a stay, [and] that alone is insufficient to defeat a motion to stay." *TC Tech. LLC v. T-Mobile USA, Inc.*, Case No. 6:20-cv-00899-ADA (Dkt. 44, at 4) (W.D. Tex. Dec. 7, 2021); *see also*, *Cypress Lake Software*, 2019 U.S. Dist. LEXIS 229613, at *10 (noting that prejudice arising from delay "exists in every case where a patentee resists a stay, and it is therefore insufficient, standing alone, to defeat a stay motion"); *Software Rights Archive, LLC v. Facebook, Inc.*, Case No. 12-cv-03970 (RMW), 2013 U.S. Dist. LEXIS 133707, at *19 (N.D. Cal. Sept. 17, 2013) ("Delay alone, without specific examples of prejudice resulting therefrom, is insufficient to establish **undue** prejudice.") (emphasis in original).

Based on the above, the first factor strongly favors a stay.

**B.     The Second Factor Favors A Stay: The Case Is In Its Early Stages**.

The second factor also weighs in favor of a stay because this case just began. "Generally, the time of the motion is the relevant time to measure the stage of the litigation." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1317 (Fed. Cir. 2014). Here, the case is in its nascent stages: the parties have not filed a CRSR, and the Court has not entered a Scheduling Order, or set

any dates for litigation milestones such as *Markman* or trial. Similarly, in *Veraseal*, the Court granted a stay and found the second factor weighed in favor of a stay when "[a] scheduling conference has not occurred, no discovery has taken place, and a trial date has not been scheduled." 2018 U.S. Dist. LEXIS 230923 at *6; *TC Tech.*, Dkt. 44 at 5 (granting a stay and finding the case is in its infancy when *Markman* was six months away and fact discovery and expert discovery will not commence until a year after the initial *ex parte* reexamination occurred). *See also*, *Princeton Digital Image Corp. v. Konami Digital Entm't, Inc.*, Case No. 1:12-cv-01461-LPS-CJB, 2014 U.S. Dist. LEXIS 61555, at *12 (D. Del. Jan. 15, 2014) ("Granting such a stay early in a case can be said to advance judicial efficiency and 'maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims.'") (citation omitted).

Accordingly, the second factor strongly favors a stay.

### C. The Third Factor Favors A Stay: Resolution Of The EPRs Will Simplify The Case.

The third and most important factor also favors a stay because resolution of the EPRs may simplify issues in this case, including claim construction, non-infringement and invalidity. *See, e.g., TC Tech.*, Dkt. 44 at 6 (noting Congressional intent in simplifying proceedings by giving courts the benefit of the PTO's consideration of prior art in reexamination).

Given the significant overlap between the claim terms in the Asserted Patents and the ordered EPRs of the Related Patents, WAG's statements during the reexams will inform claim construction, including potential disclaimer of claim scope. *Microsoft Corp. v. Multi-Tech Sys.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004) ("[T]he prosecution history of one patent is relevant to an understanding of the scope of a common term in a second patent stemming from the same parent application."); *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) (noting

the presumption that "unless otherwise compelled, [ ] the same claim term in the same patent or related patents carries the same construed meaning").

Such claim term overlap is shown in Tables 1 and 2 below with bold italics.[6] Table 1 demonstrates that similar claim limitations and claim terms exist in claim 1 of the Asserted '594 Patent, and claims 1 and 4 of the Related '011 Patent. Specifically, both contain similar claim terms, *e.g.*, "media data element," "predetermined number of media data elements," "identifiers" or "serial identifiers" ('011, claim 1: "serial number"), "data rate more rapid than the playback rate of the media data elements" ('011, claim 4: "at a rate more rapid than the rate at which the media data elements are to be played out by the media player"), and "playback rate" ('011, claim 4: "rate at which the media data elements are to be played out by the media player").

| TABLE 1 ||
| --- | --- |
| **Claim 1 of the Asserted '594 Patent** (Dkt. No. 8, ¶¶ 40-41) | **Claims 1 and 4 of the Related '011 Patent** |
| 1. A method for operating a media player to receive and play an audio or video program, from a remote media source via a data connection over the Internet, the method comprising:<br><br>***sending requests from the media player to the media source*** via the data connection ***for one or more serially identified media data elements*** representing the audio or video program, each media data element comprising a digitally encoded portion of the audio or video program and having a playback rate, each request specifying one or more serial identifiers of the media data elements requested;<br><br>***receiving*** each of the requested ***media data elements*** via the data connection, wherein the | 1. A media player for receiving an audio or video program, the program comprising media data elements, from a media source over an Internet protocol network, and playing the program for a user of the media player, wherein each of the media data elements is associated with a serial number, comprising<br><br>a processor;<br><br>a memory;<br><br>a connection to the network; and<br><br>media player software comprising<br><br>instructions to cause the ***media player to request from the media source*** a |

---

[6] A defendant in another WAG litigation in the Western District of Texas also cited certain overlap between its asserted patents and related patents. *See WAG Acquisition, L.L.C. v. Amazon.com, Inc., et al.*, 21-cv-00815-ADA, Dkt. No. 30, at 2, n.3, 12-13 (motion to transfer).

| | |
|---|---|
| data connection has *a data rate more rapid than the playback rate* of the media data elements, and each received media data element is received at a rate as fast as the data connection between the media source and the media player allows;<br><br>*storing the received media data elements in a memory* of the media player;<br><br>*playing the received media data elements in series from the memory of the media player*; and<br><br>as the received media data elements are played, the media player automatically *sending additional requests* for subsequent media data elements for storage in the memory of the media player as required *to maintain* about *a predetermined number of media data elements in the memory* of the media player during playing. | predetermined number of media data elements;<br><br>instructions to cause the media player to *receive media data elements* sent to the media player by the media source and *store the media data elements in the memory*;<br><br>instructions to implement a player buffer manager, for managing a player buffer established in the memory, operable to maintain a record of the serial number of the last media data element that has been received and stored in the player buffer;<br><br>instructions to cause the media player to *play media data elements sequentially from the player buffer*; and<br><br>instructions to cause the media player to *transmit* to the media source *a request to send one or more media data elements, each identified by a serial number*, and to *repeat transmitting the requests* to the media source for sequential media data elements so as *to maintain* the *pre-determined number of media data elements in the player buffer* until the last media data element comprising the program has been received. |
| | 4. The media player of claim 1, wherein the instructions for causing the media player to request from the media source a predetermined number of media data elements further causes the media player to *receive* the predetermined number of *media data elements at a rate more rapid than the rate at which the media data elements are to be played out* by the media player. |

Table 2 shows similar overlap between claim 1 of the Asserted '824 Patent and claim 1 of the Related '141 Patent. These overlapping claim terms include, *e.g.*, "media data element," "identifiers" and "serial identifiers," "a data rate more rapid than the playback rate" ('141, claim

9

1: "rate more rapid than the rate at which said streaming media is played back by a user"), and "playback rate" ('141, claim 1: "rate at which said streaming media is played back by a user").

| TABLE 2 | |
|---|---|
| **Claim 1 of Asserted '824 Patent** (Dkt. No. 8, ¶¶ 22-23) | **Claim 1 of the Related '141 Patent** |
| 1. *A method for distributing over the Internet*, from a server system *to one or more user systems*, a pre-recorded *audio or video program* stored in digitally encoded form on computer-readable media, the method comprising:<br><br>reading, by at least one computer of the server system, the pre-recorded *audio or video program* from the computer-readable media;<br><br>supplying, at the server system, *media data elements* representing the program, each *media data element* comprising a digitally encoded portion of the program and having a *playback rate*;<br><br>*serially identifying the media data elements*, said *serial identification* indicating a time sequence of the *media data elements*;<br><br>storing the *media data elements* in a data structure under the control of the server system;<br><br>*receiving requests* at the server system via one or more data connections over the Internet, for one or more of the *media data elements* stored in the data structure, each *received request* specifying one or more *serial identifiers* of the requested one or more *media data elements*, each received request originating from a requesting user system of the one or more user systems; and<br><br>*responsive to the requests*, sending, by the server system, the one or more *media data elements* having the one or more specified *serial identifiers*, to the requesting user | 1. *A method for distributing* streaming media via a data communications medium such as *the Internet to at least one user system of at least one user*, the streaming media comprising a plurality of sequential *media data elements* for a digitally encoded *audio or video program*, comprising<br><br>providing a server programmed *to receive requests from the user system* for *media data elements* corresponding to specified *serial identifiers* and *to send media data elements* to the user system responsive to said requests, *at a rate more rapid than the rate at which said streaming media is played back by a user*; and<br><br>providing a machine-readable medium accessible to said user, on which there has been recorded software for implementing a media player for receiving and playing the streaming media on said user system, said software being programmed to cause the media player to maintain a record of the *identifier* of the last data element that has been received; and<br><br>to transmit requests to the server to send one or more data elements, specifying the *identifiers* of the data elements, as said media player requires in order to maintain a sufficient number of *media data elements* in the media player for uninterrupted playback. |

10

| | |
|---|---|
| systems corresponding to the requests; wherein<br><br>the data connection between the server system and each requesting user system has *a data rate more rapid than the playback rate* of the one or more *media data elements* sent via that connection;<br><br>each sending is at a transmission rate as fast as the data connection between the server system and each requesting user system allow;<br><br>the one or more *media data element* sent are selected without depending on the server system maintaining a record of the last *media data element* sent to the requesting user systems;<br><br>all of the *media data elements* that are sent by the server system *to the one or more user systems are sent in response to the requests*; and<br><br>all of the *media data elements* that are sent by the server system to the requesting user systems are sent from the data structure under the control of the server system as the media data elements were first stored therein. | |

Some of these claim terms noted above also appear in claim 2 of the '839 Patent, which is also being reviewed by the PTO (*e.g.*, "media data elements," "playback rate," "rate more rapid than the playback rate").

WAG likely will provide statements in responding to office action rejections that relate to the overlapping claim terms identified in Tables 1-2.  Such statements will become part of the file history of the Related Patents and be relevant during claim construction.  *See Microsoft*, 357 F.3d at 1349; *Nestle USA, Inc. v. Steuben Foods, Inc.*, 884 F.3d 1350, 1351-52 (Fed. Cir. 2018)

11

(applying collateral estoppel to claim construction, even though claims were not identical, where the Federal Circuit had previously construed the same term in appeal involving related patent).

Courts have maintained a stay under similar situations. In *Viavi Sols. Inc. v. Platinum Optics Tech. Inc.*, the Court refused to lift a stay finding that the PTAB's decision on an instituted IPR could have claim construction implications for the other two patents-in-suit (where no IPR was instituted), because the two patents-in-suit are continuations of the instituted IPR and there were similarities in the claims. Case No. 5:20-cv-05501-EJD, 2021 U.S. Dist. LEXIS 202390, at *4 (N.D. Cal. Oct. 20, 2021). *See also TC Tech.*, Dkt. 44 at 6-7 (staying case where reexamination already was ordered and noting potential for simplification of issues).[7] Likewise here, given the significant overlap in claim terms, there could be claim construction implications for the Asserted Patents. Moreover, to the extent any of those claim terms are narrowed by WAG's statements, that further will allow the parties to streamline infringement and non-infringement positions.

Staying the case also will inform invalidity given the overlapping claim limitations shown in Tables 1-2. Because of the similarity of the Asserted and Related Patents, if the PTO finds the claims of the Related Patents invalid, the validity of the Asserted Patents becomes questionable. *See Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342-43 (Fed. Cir. 2013) (affirming a finding of invalidity on the basis of collateral estoppel: "[i]f the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies"); *Tinnus Enters., LLC v. Telebrands Corp.*, Case No. 6:15-cv-00551-RWS, 2019 U.S. Dist. LEXIS 114601, at *10-15 (E.D. Tex. Apr. 16, 2019) (finding

---

[7] Courts in WAG's cases involving the Related Patents, '839 and '611 Patents recently stayed the case or claim construction proceedings pending reexaminations. *See WAG Acquisition, L.L.C. v. FriendFinder Networks Inc., et al.*, 3:19-cv-05036-JD (N.D. Cal.), Dkt. No. 233 (ordering stay of case); *WAG Acquisition, L.L.C. v. Flying Crocodile, Inc., et al.*, 2:19-cv-01278-BJR (W.D. Wash.) Dkt. No. 285, 1 (ordering stay of "claim construction proceedings and a Markman hearing").

12

issue of obviousness applies from one patent to a related patent when "claims at issue are substantially similar" and "differences between claims are immaterial.").

Indeed, in ordering the EPRs, the PTO found several SNQPs over numerous prior art references, calling into question the patentability of the claims of the Related Patents and by implication, the claims of the Asserted Patents. *See* MPEP § 2216 ("37 CFR 1.510(b)(1) requires that a request for *ex parte* reexamination include 'a statement pointing out each substantial new question of patentability [SNQP] based on prior patents and printed publications.' If such a new question is found, an order for *ex parte* reexamination of the patent is issued."). As noted above, the PTO found **four** SNQPs for each challenged claim of the '141 Patent and **nine** SNQPs for each challenged claim of the '011 Patent. Exs. 6 and 9. Importantly, the PTAB previously invalidated a similar claim in the '141 Patent in an *inter partes* review proceeding using the very same reference that forms one of the SNQPs for the '141 Patent EPR. *See* Ex. 7 (invalidating claim 10 over U.S. Patent No. 6,389,473 to Carmel et al.). Given that those patents and claims are expired and cannot be amended, the chance of the PTO invalidating them is not mere speculation, but statistically likely (*see* Ex. 11), and any such finding may guide this Court in evaluating the validity of the Asserted Patents. *See TC Tech.* (Dkt. 44 at 6) (noting PTO cancels or amends claims in 80% of reexaminations).

Further, the PTO's reexamination statements about the prior art will guide the Court on what each reference teaches. If the PTO determines that certain prior art teaches the overlapping limitations in Tables 1-2, this will be instructive to the Court, especially at this juncture "where the court has not invested significant resources into familiarizing itself with the technology." *Evolutionary Intelligence, LLC v. Millennial Media, Inc.*, Case No. 5:13-CV-04206-EJD, 2014 U.S. Dist. LEXIS 81090, at *12-13 (N.D. Cal. June 11, 2014); *E-Watch, Inc. v. Lorex Can., Inc.*,

Case No. 4:12-cv-03314, 2013 U.S. Dist. LEXIS 138198, at *6-7 (S.D. Tex. Sep. 26, 2013) ("the USPTO's insight and expertise regarding the validity of the patents would be of invaluable assistance to this court.").

Accordingly, the third factor also strongly favors a stay.

## V.    CONCLUSION

For all the foregoing reasons, Netflix respectfully requests that this Court grant its Motion to Stay.

Dated: January 7, 2022

/s/ Sarah S. Brooks

Sarah S. Brooks (*pro hac vice*)
Margaret K. Ukwu (*pro hac vice*)

**VENABLE LLP**
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901
ssbrooks@venable.com
mkukwu@venable.com

Frank M. Gasparo (*pro hac vice*)
Ralph A. Dengler (*pro hac vice*)
Andrew P. MacArthur (admitted to this Court)
J. Daniel Kang (*pro hac vice*)

**VENABLE LLP**
Rockefeller Center
1270 Avenue of the Americas, 24th Fl.
New York, NY 10020
fmgasparo@venable.com
radengler@venable.com
apmacarthur@venable.com
jdkang@venable.com

*Attorneys for Defendant Netflix, Inc.*

14

## CERTIFICATE OF CONFERENCE

Counsel for Netflix met and conferred via zoom on January 5, 2022 with counsel for Plaintiff WAG regarding this motion to stay. Counsel for WAG indicated that WAG would oppose this motion.

Dated: January 7, 2022

                                                        */s/ Sarah S. Brooks*
                                                        Sarah S. Brooks

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been filed on this 7th day of January, 2022, pursuant to the CM/ECF system of the United States District Court for the Western District of Texas, which provides for service on counsel of record in accordance with the electronic filing protocols in place.

Dated: January 7, 2022

                                                    */s/ Sarah S. Brooks*
                                                    Sarah S. Brooks